UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ELIZABETH L. | : |
| | : |
| v. | :    C.A. No. 23-00008-WES |
| | : |
| KILOLO KIJAKAZI, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

      This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on January 5, 2023 seeking to reverse the Decision of the Commissioner. On June 21, 2023, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF No. 12). On July 18, 2023, Defendant filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF No. 15). On August 1, 2023, Plaintiff filed a Reply. (ECF No. 16).

      This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF

No. 12) be DENIED and that the Commissioner's Motion for an Order Affirming (ECF No. 15) be GRANTED.

I. **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on June 29, 2020 alleging disability since March 13, 2020. (Tr. 172-176). The Application was denied initially on October 21, 2020 (Tr. 64-72) and on reconsideration on March 25, 2021. (Tr. 74-82). Plaintiff requested an Administrative Hearing. On November 2, 2021, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 39-62). The ALJ issued an unfavorable decision to Plaintiff on November 30, 2021. (Tr. 13-34). The Appeals Council denied Plaintiff's request for review on November 1, 2022. (Tr. 1-3). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

II. **THE PARTIES' POSITIONS**

Plaintiff argues that the ALJ's Step 2 finding that she had no severe physical impairments and also his subsequent finding of no physical limitations in the residual functional capacity ("RFC") are not based on substantial evidence and contain legal errors. She also alleges error in the ALJ's evaluation of her pain and other symptoms.

The Commissioner argues that the ALJ's findings are all legally and factually supported and must be affirmed.

III. **THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence

must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the

Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's

treating providers).  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors.  Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements).  Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied).  Of the five factors, the "most important" are supportability and consistency.  Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors.  Id. §§ 404.1520c(b)(3), 416.920c(b)(3).  In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address

all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois

v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v.

Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.     Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

>   (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
>   (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
>   (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
>   (4)    Treatment, other than medication, for relief of pain;
>
>   (5)    Functional restrictions; and
>
>   (6)    The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider

the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

V.   **APPLICATION AND ANALYSIS**

A.   **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found Plaintiff's post-traumatic stress disorder ("PTSD"), anxiety, and depression were severe impairments, none of which met or medically equaled a Listing. (Tr. 19-20). The ALJ also found Plaintiff had several non-severe, medically determinable impairments including diabetes mellitus; hyperlipidemia; pulmonary hypertension; lower extremity edema; asthma; carpal tunnel syndrome; and obesity. (Tr. 19). Then, at the RFC stage, the ALJ found Plaintiff could perform a full range of work at all exertional levels, but with non-exertional limitations. (Tr. 23). Based on this RFC and the opinion testimony of the VE, the ALJ denied Plaintiff's claim. (Tr. 33-34).

B.   **Plaintiff Has Shown No Error in the ALJ's Step 2 or RFC Findings**

Plaintiff initially argues that the ALJ's "stated rationale" for his Step 2 non-severity findings are unsupported and any other proffered rationale can only be improper post hoc rationalization. (ECF No. 12 at p. 10). First, Plaintiff has not convincingly shown that the ALJ's "stated rationale" is unsupported. (Tr. 19). The ALJ reasonably found that Plaintiff's

physical impairments were being "managed medically" and "should be amenable to proper control by adherence to recommended medical management and medication compliance." (Tr. 20). The ALJ properly identified medical evidence, including Dr. Malek's September 21, 2021 treatment notes, supporting his findings. Id. For example, the ALJ considered Dr. Malek's note that Plaintiff's Type 2 diabetes mellitus was "well controlled" with an A1C level that was close to the goal. Id.; citing Tr. 642. As a result, Dr. Malek instructed Plaintiff to continue with her current treatment regimen. Id. The ALJ also considered that Plaintiff's blood pressure was only slightly elevated; her pain score was 5/10; her lungs were clear to auscultation bilaterally; she had normal respiratory effort; her heart exam showed regular rate and rhythm, with no murmurs; her hands showed no notable swelling or joint deformity bilaterally; and she was alert and oriented, with normal affect. Id.; see Tr. 641-643. It was not error for the ALJ to find that this evidence did not support the presence of significant limitations in Plaintiff's ability to work. See 20 C.F.R. § 404.1520(c).

Plaintiff's claim that her "well-documented lower extremity edema" would result in a finding of disability because she would need to elevate her legs is unsupported by the record and an improper request of this Court to reweigh the evidence in her favor. See Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Here, it is clear that the ALJ considered Plaintiff's edema throughout the decision, but supportably found it was non-severe. See Tr. 19, 27-30. Plaintiff argues that the ALJ "overlooked" certain evidence of her edema, such as a photograph by consultative examiner Dr. Steven McCloy. (ECF No. 12 at p. 10). However, the ALJ actually cited the record where the photograph was found, even if he did not specifically refer to the photograph itself. See Tr. 19 (noting that Plaintiff was

-14-

"evaluated and treated" for lower extremity edema and citing to 12F, page 2 where the photograph is embedded in the report); Tr. 21 (citing 12F, page 2); Tr. 27 (discussing physical examination findings and citing 12F, page 2). Further, while the photograph evidences the presence of edema, it is undisputed that Plaintiff had edema and the real issue was the impact, if any, of that condition on her ability to work. The photograph by itself is simply not probative on the issue of functional limitations.

Further, Plaintiff fails to show any error in the ALJ's evaluation of Dr. Malek's treatment notes in this regard. While Plaintiff accurately observes that Dr. Malek referenced her edema multiple times, this does not establish that her edema caused a significant limitation in her ability to perform basic work-related activities. 20 C.F.R. § 404.1520(c); SSR 85-28, 1985 WL 56856, at *3. Plaintiff also points to the fact that the State Agency Consultant noted that she had "edema of feet present for years." (ECF No. 12 at p. 14; see Tr. 79). Again, this misses the mark because it shows the State Agency Consultant was aware of and considered this undisputed condition but still found that Plaintiff had no severe physical impairments. See Tr. 75 (State Agency Consultant considering chronic lower extremity edema but noting "uses Lasix & compression stockings for LE edema.").

Turning to the State Agency Consultants' non-severe findings, Plaintiff has shown no error in the ALJ's reliance on them and his finding that they were well supported and consistent with the evidence. (Tr. 29). While Plaintiff is correct that the ALJ discussed the State Agency Consultants' findings later in the RFC portion of the decision, her argument improperly puts form over substance. The ALJ's decision must be read as a whole. See West v. Berryhill, No. 17-1170, 2017 WL 6499834, *1 (1st Cir. Dec. 11, 2017) ("More fundamentally, the court

considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings.") (citing Irlanda Ortiz v. Sec'y of Health & Human Serv., 955 F.2d 765, 769 (1st Cir. 1991)). More to the point, the ALJ explicitly stated that he was relying, in part, on the prior administrative medical findings, (Exhs. 2A and 4A), which he found persuasive, to support his finding that Plaintiff's physical impairments were not severe. (Tr. 29).

Plaintiff next argues that, even putting aside whether or not the ALJ actually considered the State Agency Consultant opinions at Step 2, such consultants are afforded absolutely no preferential treatment under the Regulations. (ECF No. 12 at p. 11). Plaintiff asserts that, pursuant to 20 C.F.R. § 404.1520b(c)(3)(ii), the NSI (no severe impairment) findings of the Consultants are "statements on issues reserved to the Commissioner" and are "inherently neither valuable nor persuasive." Plaintiff thus contends that the ALJ's finding that the State Agency Consultant NSI findings were "persuasive" is contrary to the plain language of the regulations and harmful legal error. In other words, Plaintiff argues that those NSI findings should never have been considered and no amount of post hoc analysis can undo that legal error. (ECF No. 16 at p. 4).

Although the revised Regulations in question have been effective since 2017, Plaintiff offers no case precedent or other legal authority as support for her argument. It is solely based on Plaintiff's proposed reading of the current Regulations. Although the Regulations could be more clearly drafted, Plaintiff's argument is not persuasive to this Court. The Regulations, as revised, now combine "two types of evidence" produced by state agency medical consultants – administrative findings of fact and medical opinions – into a single category of evidence

called "prior administrative medical findings."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560-01, at 62564; 2016 WL 4702272 (Sept. 9, 2016); see 20 C.F.R. § 404.1513(a)(5).  At the same time, the Regulations were revised to separately identify several other types of evidence that are considered to be inherently neither valuable nor persuasive to the issue of whether a claimant is disabled under the Social Security Act, including statements on issues reserved to the Commissioner such as Step 2 severity.  81 Fed. Reg. at 62566; 2016 WL 4702272; see 20 C.F.R. § 404.1520b(c)(3).

As noted above, the current Regulations include the category of evidence called prior administrative medical findings, defined as, "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record," such as "[t]he existence and severity of your impairment(s)."   20 C.F.R. § 404.1513(a)(5)(i) (emphasis added).   These prior administrative medical findings are not binding on the ALJ; however, pursuant to 20 C.F.R. § 404.1513a(b), the ALJ "must" consider their persuasiveness and articulate their consideration under 20 C.F.R. § 404.1520c(b) because the medical consultants making those findings are "highly qualified and experts in Social Security disability evaluation."  The current Regulations separately identify "Statements on issues reserved to the Commissioner" as a type of evidence that is inherently neither valuable nor persuasive to the issue of whether a claimant is disabled under the Social Security Act, and the Regulations provide the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." 20 C.F.R. § 404.1520b(c) (emphasis added).

Plaintiff's argument improperly conflates prior administrative medical findings (which <u>must</u> be considered) with a statement on an issue reserved to the Commissioner (which <u>must not</u> be considered). Because the Regulations identify prior administrative medical findings as a separate category of evidence and set forth how an ALJ must consider them and articulate such consideration, Plaintiff's argument that such findings should not be considered and are inherently neither valuable nor persuasive is simply unsupported by a plain reading of the Regulations as a whole.  Additionally, such a reading would render the Regulations regarding the treatment of prior administrative medical findings as meaningless.  Simply put, if Plaintiff's argument was accepted, the Court would be improperly reading a conflict into the Regulations when they can otherwise be reasonably read in harmony.  In the end, the ALJ here properly considered the prior administrative medical findings in support of his Step 2 finding that Plaintiff's physical impairments were not severe.  <u>See</u> <u>Vanessa C. v. Kijakazi</u>, No. 20-363MSM; 2021 WL 3930347, *6 (D.R.I. Sept. 2, 2021).  Plaintiff has shown no error.

**C.**   **Plaintiff Has Shown No Error in the ALJ's Evaluation of Her Subjective Symptoms**

Plaintiff's challenge to the ALJ's evaluation of her subjective complaints is based primarily on the unsuccessful Step 2 arguments discussed above.  (ECF No. 12 at p. 14). ("[S]ince the ALJ's assessment of physical impairments is flawed <u>ab initio</u>, the ALJ's assessment of [Plaintiff's] statements concerning her functioning cannot be supported by substantial evidence.")  However, as explained above, the Court has found those arguments unpersuasive.  Even setting aside those unsuccessful arguments, Plaintiff's challenge to the ALJ's subjective complaints evaluation is unconvincing.

Substantial evidence adequately supports the ALJ's finding that Plaintiff's allegations were "not entirely consistent with the objective evidence and other evidence in the record as a whole[.]" (Tr. 24). For example, the ALJ considered Plaintiff's daily activities, including that she was taking GED classes and that she helped her friend with her jewelry business by posting on Facebook. (Tr. 23; see 20 C.F.R. § 404.1529(c)(3)(i)). The ALJ also properly evaluated Plaintiff's reports about swelling and pain, including her symptoms and treatment. (Tr. 23; see 20 C.F.R. § 404.1529(c)(3)(ii)-(iv)). The ALJ had the discretion to consider "the entire case record, including the objective medical evidence," to determine the intensity and persistence of Plaintiff's symptoms. SSR 16-3p, 2017 WL 5180304, at *4; see also 20 C.F.R. § 404.1529(c)(2). Therefore, it was not legal error for the ALJ to note that the objective medical examinations, diagnostic imaging, and lab test results did not support Plaintiff's allegations. (Tr. 32). Plaintiff has shown no error in the ALJ's evaluation of her reported pain and other symptoms.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 12) be DENIED and that the Commissioner's Motion for an Order Affirming (ECF No. 15) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United

States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 8, 2023